**Roberta RANDALL, Louise Randall and William Randall, minors, by James E. Randall, their Father and next friend, et al., Plaintiffs,**

**v.**

**SUMTER SCHOOL DISTRICT NUMBER 2, SUMTER, SOUTH CAROLINA, a public body corporate, and Dan L. Reynolds, etc., et al., Defendants.**

**Civ. A. No. AC–1240.**

United States District Court
E. D. South Carolina,
Columbia Division.

Heard July 14, 1964.

Decided Aug. 8, 1964.

Ernest A. Finney, Jr., Ira Kaye, Sumter, S. C., Matthew J. Perry, Lincoln C. Jenkins, Jr., Columbia, S. C., Jack Greenberg, New York City, for plaintiffs.

Shepard K. Nash, John S. Wilson, Sumter, S. C., for defendants.

HEMPHILL, Chief Judge.

Action instituted on behalf of thirteen Negro children [1] by their respective parents, as next friends, on behalf of themselves and others similarly situated, for an injunction enjoining defendants, their agents, etc., from: (1) operating a compulsory biracial school system in Sumter School District No. Two [2] ; (2) maintaining a dual scheme or pattern of school zone or attendance area lines based on race or color; (3) assigning pupils in the District on basis of race and color; (4) assigning teachers or school personnel on basis of race and color; (5) administering the District affairs in a manner designed to maintain or support compulsory racially segregated schools; or, in the alternate, seeking a decree of direction and order to defendants requiring presentation of a plan of reorganization of the schools in the District on a nonracial basis. Complaint also prays costs and attorney fees.

Jurisdiction is alleged under Title 28 U.S.C. § 1343(3) and Title 42 U.S.C. § 1983.[3] Defendants raised the question of jurisdiction [4] but the issue was not seriously pressed. Consistent decisions uphold the right of plaintiffs to seek this forum. See Brown v. School District No. 20, Charleston, South Carolina, D.C., 226 F.Supp. 819 (1963); Ruark v. Schooley, D.C., 211 F.Supp. 921; Davis v. Foreman, 7 Cir., 251 F.2d 421, cert. den. 356 U.S. 974, 78 S.Ct. 1137, 2 L.Ed.2d 1148; Shuttleworth v. Gaylord, D.C., 202 F.Supp. 59, 62, aff. 5 Cir., 310 F.2d 303; N.A.A.C.P. v. Gallion, D.C., 190 F.Supp. 583, 585. This Court finds jurisdiction lies in its forum.

Plaintiffs who have not moved [5] attend an all-Negro school [6], a denominational school, or hope to enter school.[7] All live on Shaw Air Force Base, a United States defense establishment; all originally came from various states. No Negro child has been assigned to a school which white children attend in Sumter School District Number Two, which operates elementary and high schools. No official announcements or resolutions have been made or adopted by defendants pertaining to desegregation of public schools. Pupils are assigned to schools by the superintendent unless a written request by parents is submitted to the Trustees for assignment to a specific school. "Nothing has been done by defendants in the way of initiating non-segregation and bringing about the elimination of racial segregation in the public schools under the jurisdiction of defendants".[8] Effort has been made to close certain schools.[9]

1. Action commenced July 14, 1963: as of July 14, 1964, the Randall family, Lewis family, Hamilton family and Dickens family had been transferred and minor Joanne Rivers had completed high school. Plaintiffs are children of Negro citizens of the United States who are in the military service of the United States.

2. Sumter County, South Carolina.

3. Title 42 U.S.C. § 1983 (17 Stat. 13) is the original Act establishing liability by suit at law, or in equity for deprivation of civil rights. Title 28 U.S.C. § 1343(3) establishes jurisdiction in the district courts of the United States: "To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom, or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States".

4. The First Defense alleged "neither admit nor deny" which is at best a questionable manner of joining or raising issues. The Second Defense alleged: " * * * this Court lacks jurisdiction of this action, on information and belief".

5. See footnote 1.

6. A public school operated by Sumter County.

7. Originally proposed as of September 1963.

8. Answer given by Defendants in March 16, 1964, Answer to Interrogatories submitted by Plaintiffs.

9. In CA 1469, United States v. Sumter School District No. 2, et al., 232 F. Supp. 945, decided July 29, 1964, Defendants were enjoined by the U. S. District Court for the Eastern District of

In the white schools the race of the teachers is white; in Negro it is Negro. Plaintiffs made application personally [10] or in writing, to Superintendent Stoddard for enrollment in schools designated for white children. Stoddard reported to the Trustees, who, in turn, assigned plaintiffs to Ebenezer School, a Negro school operated by School District Number Two. The record reveals no reason for the assignment, no communication from the Trustees, or Superintendent, to the individual applicants, to the group, nor, for that matter, to the public, and/or residents of School District Number Two.

At the hearing before this Court both counsel agreed that the record was complete, including various interrogatories and the deposition of District Two Superintendent Hugh T. Stoddard. Motion for Summary Judgment, pursuant to Rule 56 (a) of the Federal Rules of Civil Procedure, precipitates this decision. Pertinent facts are not contradicted.

The record fully sustains plaintiffs' contentions that the defendants are maintaining a dual, biracial system, some schools being attended solely by white pupils and staffed by white teachers, principals and other professional personnel and some schools being attended solely by Negro pupils and staffed by Negro principals, teachers and other professional personnel. None of the public schools in the School District are integrated.

■ The Court takes judicial notice that State law required the maintenance of racially segregated schools prior to Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873. After decision was made in Brown v. Board of Education, supra, the defendants took no action to change the racially separate character of Sumter Schools.

Defendants' Answer leaves no doubt concerning the racially segregated char-

acter of the public schools in the school district. The answers to the interrogatories propounded by plaintiffs likewise leave no doubt concerning that fact.[11]

The action taken by the defendants on the applications which plaintiffs made for transfer in this matter makes clear a fact which is obvious to all, namely, that the public schools in the defendant school district are still racially segregated.

Aside from a general denial and a plea of jurisdiction the Answer contains a Third Defense pleading the lateness of application for transfer and the exclusiveness of State law and remedies. The first contention becomes moot in view of the passage of time. It is unnecessary to discuss the second in view of the legal principles which control cases of this type; it is only necessary to apply the principles to the facts of this case. An extended discussion of the controlling law is found in Brown v. School District No. 20, Charleston, South Carolina, 226 F. Supp. 819 (E.D.S.C.1963); affd. 328 F.2d 618 (4 Cir. 1964).

■ The Fourth Defense in the answer to the complaint which was filed on September 14, 1963, is that teachers and pupil assignments have been fixed and set to operate through the school year 1963–1964 and that this suit is premature because there is adequate time to exhaust appropriate administrative remedies "before the 1964–1965 school year begins in September, 1964." The answer to this contention is that the intervening time has shown that this "exhaustion of administrative remedies" is for naught, and in fact the School Board has done nothing to implement that which is the clear mandate of the law. The concept of "deliberate speed" was never contemplated to "countenance indefinite delay in elimination of racial barriers in schools * *." Watson v. Memphis, 373 U.S. 526, 530, 83 S.Ct. 1314, 1317, 10 L.Ed.2d 529; Brown v. School District No. 20, Charleston,

---

South Carolina from closing certain schools to Shaw Air Force Base children, segregation not being an issue in that case; the three schools involved were all white schools.

10. The record is silent as to which children or parents, or both personally appeared.

11. See especially answers to Nos. 3(a), 3 (b), 3(c), 3(d), 9 and 11.

South Carolina, supra, 226 F.Supp. at 822, et seq.

As a Fifth Defense, the School District notes that "the law imposes upon them the duty of protecting and promoting the best educational interests and developmental potentialities of all school children within the District, whether White or Negro." No Court could ever disagree with that; however, the Board goes further and states that there are "such differences and disparities between the ethnic group (Negro) * * * represented by plaintiffs and that represented by defendants [12] (white) as to form a rational basis for separating such ethnic groups in the schools of Sumter County * * *." Defendants then proceed to state, and were allowed to introduce evidence [13] to back up their contention, that there are certain ethnic, cultural, racial, intellectual, anthropological, and physical differences between Negroes and Whites. Defendants allege that these "differences" form a sufficient rational basis to allow segregation in the public schools of Sumter County.

Justification to segregate on the basis of these alleged "differences" is no longer permissible; the issue is no longer litigable. The law is clear: Racial classifications are irrelevant and invidious. Goss v. Board of Education, 373 U.S. 683, 687, 83 S.Ct. 1405, 10 L.Ed.2d 632. "(N)o official * * * (action) plan or provision of which segregation is the inevitable consequence may stand under the Fourteenth Amendment." Id. at 689, 83 S.Ct. at 1409. See also Brown v. School District No. 20, Charleston, South Carolina, supra, 226 F.Supp. at 825–826, in which case the Court sitting in this district also refused to consider such alleged "differences".

Plaintiffs are entitled, therefore, to injunctive relief enjoining defendants from continued operation of a segregated public school system and from taking any action that regulates or affects on the basis of color the admission, enrollment or education of the minor plaintiffs, or any other Negro children similarly situated. Jeffers v. Whitley, 4 Cir., 309 F.2d 621, 628, 629 n. 14 and cases cited therein. Despite repeated attempts by plaintiffs to obtain a desegregated education, defendants have taken no steps, ten years after the Brown decision toward removing the requirement of segregation in the schools which has been held violative of the constitutional rights of plaintiffs. Numerous decisions of the United States Court of Appeals for the Fourth Circuit hold unmistakably that this "attitude of intransigence" justifies the issuance of an injunction "to dispel the misapprehension (if there is any) of school authorities as to their obligations under the law and to bring about their prompt compliance with constitutional requirements as interpreted by the Supreme Court." School Board of Charlottesville v. Allen, 240 F.2d 59, 64 (4th Cir. 1956); Jeffers v. Whitley, 309 F.2d 621, 629; Green v. School Board of City of Roanoke, Va., 4 Cir., 304 F.2d 118; Marsh v. County School Board of Roanoke County, Va., 305 F.2d 94 (4th Cir. 1962).

1. Defendants herein and their agents, servants and employees shall admit and enroll as students the remaining plaintiffs [14] at the white school, where a white child would normally attend, if he or she resided in the same school zone that each of plaintiffs respectively resides in, subject to the same terms and conditions as other students enrolled there, provided only, that these minor plaintiffs present themselves at said school for registration at the beginning of the new school term in September 1964.

2. The defendants, their agents, servants and employees are hereby restrained and enjoined from refusing admission to the minor plaintiffs herein on the basis of race or color.

12. The Court presumes that the School Board should represent *all* the children.

13. Subject to the evidence being justified and relevant.

14. See footnote 1. Some of minor plaintiffs have moved.

3. Due to the short period of time before the beginning of the 1964–65 school year; the uncertainty of the number of applicants that may desire transfer to a different school than the one in which they are presently enrolled; the uncertainty of the number of first grade students who may desire transfer to a different school than the one in which they are presently enrolled; the uncertainty of the number of first grade students who may desire to enroll in a school other than the one in which they would have been enrolled prior to this order; and the administrative difficulties that would necessarily flow from such uncertainties, this Court, in the exercise of the discretion vested in it, holds that it would be impractical to require the Board to admit others, similarly situated to the plaintiffs herein, to schools other than those they are presently enrolled in or other than those that they would be initially enrolled in, under the dual system now in existence for the 1964–65 school year.

4. Beginning, however, with the school year 1965–66 the defendants and their agents, servants and employees are hereby restrained and enjoined from refusing admission, assignment or transfer of any other Negro child entitled to attend the schools under their supervision, management or control, on the basis of race or color.

5. Beginning with the school year 1965–66, the defendants and their agents, servants and employees are hereby restrained and enjoined from:

(a) Failing or refusing to freely and readily grant all requests by parents or guardians for the transfer or initial assignment of pupils to a school attended solely or largely by pupils of another race;

(b) Conditioning the grant of requests for transfers or initial assignments pursuant to paragraph 5(a) above upon the applicants' submission to any futile, burdensome or discriminatory administrative procedures. This provision is intended to include, but is not limited to, prohibiting the use of such administrative procedures as standards for deciding such requests which are not generally and uniformly applied in assigning all pupils, and the requirement that pupils or parents attend administrative hearings, or submit to tests or other evaluations which are not uniformly applied in assigning pupils.

6. Defendants, their agents, servants and employees shall inform the parents or guardians of all pupils presently attending school in School District Number Two, as well as all those who shall hereafter enroll in the said school system, of the right of all pupils to freely choose to attend a racially nonsegregated school, in the following manner:

(a) The following notice or its equivalent shall be individually given in writing at the times prescribed in subparagraph (b) below to the parents or guardians of all pupils:

"Every child in School District Number 2 school system has the right to attend a school freely selected without regard to race or color. Parents' requests for initial assignment or transfer of pupils in order to attend a school with members of the other race will be freely granted. If your child is entering school for the first time, you may present the child for enrollment at any school serving the child's grade level without regard to whether the school you choose is or was formerly attended solely by Negro pupils or solely by white pupils. If your child is now assigned to an all-Negro or an all-white school, and you desire that the child be transferred to another school in order to obtain a desegregated education, you should indicate this desire on this notice in the space provided and return it to your child's present teacher or principal." The foregoing language is sufficient under this Order, but the school authorities may adopt such other language consistent with the purpose of the order as they may desire. The defendant school authorities may give this notice by regular United States mail or by any other means which will fairly insure that copies reach all parents concerned.

(b) The notices prescribed in subparagraph (a) above shall be given to the par-

ents of every child presently enrolled in School District Number 2 system at least ten (10) days before the end of the 1964–65 school year. The same notice shall be given to the parents of every child who is enrolled in School District Number 2 system at the end of the 1964–65 school year at least thirty (30) days before the beginning of the 1965–66 school year, and thereafter the notice shall be given to such persons at least thirty (30) days before the beginning of each school year, unless the defendants secure the approval of the Court to give the notice in some other manner. The same notice shall also be given to the parents of every child who shall enroll in School District Number 2 school system for the first time, whether such child is beginning school, has changed residence from another school, administrative unit or otherwise, at or prior to the time any such pupil is first assigned to or enrolled in a school in the system, at whatever time of the year this may occur.

7. The provisions of paragraphs 5 and 6 above are to remain in effect until the defendant school authorities present to this Court, and with its approval, adopt some other plan for the complete elimination of racial discrimination in the operation of the public schools in School District Number 2. When and if the defendants file such a desegregation plan with the Court, they shall serve copies upon plaintiffs' attorneys and the Court will schedule further hearings in order to judge the adequacy of such plan.

8. The School Board of District Number 2 may apply to this Court for any reasonable modification of this Order necessary to solve and eliminate any administrative difficulties that may arise hereunder.

9. This Court retains jurisdiction of this cause for such further proceedings and entry of such further orders as are necessary and proper, including the questions of teacher qualifications and assignments as well as attorneys' fees requested by plaintiffs.

10. If some of the named defendants are no longer serving in the capacity of officials of School District Number 2; it is ordered, that their successors in office, not originally named as defendants in this action, are substituted as defendants herein for their predecessors in public office. Counsel for the defendants are directed to make known to the United States Marshal, the names of the present school officials of School District Number 2, in order that a copy of this Order may be served upon each, personally, by the Marshal.

And it is so ordered.