167 So.2d 174

**Hillard A. SANDERS**

v.

**STATE.**

3 Div. 142, 149.

Court of Appeals of Alabama.

Aug. 18, 1964.

420

See also 377 U.S. 125, 84 S.Ct. 1141, 12 L.Ed.2d 174.

**421**

Hillard A. Sanders, pro se.

Richmond M. Flowers, Atty. Gen., for the State.

CATES, Judge.

We remand these causes to the circuit court for proceedings consistent with the opinion of the United States Supreme Court in Sanders v. Alabama, 377 U.S. 125, 84 S.Ct. 1141, 12 L.Ed.2d 174, reversing Sanders v. State, 42 Ala.App. 67, 152 So.2d 439, and post p. 700, 155 So.2d 535.

Without elaborating, the Supreme Court simply cites Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799; Draper v. Washington, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899; and Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811.

In a case that goes by certiorari from a state judicial system before the Federal court of last legal resort, there are two actual records. One court may not have seen what is before the other. Title 28, U.S.C. § 1257(3); Supreme Court Rule 23.

Thus, the state court trial and appellate record *presumably*—at least in pertinent part—is appended to the petition to the

United States Supreme Court.[1] Rule 23, supra. However, it seems also that the postures of the parties in appellate pleadings, briefs and argument go far in framing the final Federal order. See NAACP v. Alabama, 265 Ala. 349, 91 So.2d 214; 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488; 268 Ala. 531, 109 So.2d 138; 360 U.S. 240, 79 S.Ct. 1001, 3 L.Ed.2d 1205, and 377 U.S. 288, 84 S.Ct. 1302, 12 L.Ed.2d 325.

There can, accordingly, be a gap of controlling factual premises because the state court has not always been apprised of the proceedings beyond its own files.

## I.

### The Record

#### A.

##### In this Court

With this preface, we proceed to review what has been put before us. We list in reverse chronological order:

1.. Circuit Court Case No. 749 (our 3 Div. 142):

(a) Mandate from the United States Supreme Court bearing date of June 25, 1963 (sic) referring to:

(b) Order of the said court of April 20, 1964.

(c) Opinion of April 20, 1964, 377 U.S. 125, 84 S.Ct. 1141, 12 L.Ed.2d 174.

(d) Opinion of Alabama Supreme Court, 275 Ala. 698, 155 So.2d 535 (3 Div. 85, 85A).

(e) Opinion of this court, 42 Ala.App. 67, 152 So.2d 439.

(f) Transcript of Record proper (without testimony) under certificate of the clerk of the Circuit Court of February 8, 1963.

(g) Supplement to (f) above, certified April 29, 1963.

(2) Circuit Court Case No. 740 (our 3 Div. 149):

(a) through (d), the same as in 1, above (i. e., 3 Div. 142).

(e) Opinion of this court, Ala.App., 155 So.2d 535.*

(f) Transcript of the Record proper (without testimony) under certificate of the clerk of the Circuit Court of April 3, 1963.

#### B.

##### The Record Before the United States Supreme Court

From the Attorney General's file, we consider the following to have been before the Supreme Court of the United States:

(1) Application for leave to proceed in forma pauperis.

(2) Petition for certiorari. [Under "Questions Presented" we find:

"1. Whether an unlawfully constituted Grand Jury can return a valid indictment.

"2. Whether State Appellate Courts can decide an appeal premised on a deleted and mutilated record proper.

"3. May the State Appellate Courts in deciding an appeal ignore recent applicable decisions of the Supreme Court of the United States.

"4. May a defendant be denied a free transcript of the evidence of his trial on the grounds that he failed to comply through ignorance of law and inability to obtain notary public service in County Jail, with the window-dressing elements of Section 380(1) of Title 15 of the Alabama Code.

---

1. The writer is aware of one instance, on review by the U. S. Supreme Court, of a petition's being altered in the text of the copy of the official opinion of this court. The clerk corrected the change.

* Post p. 700.

"5. May a defendant be denied the Right to Counsel during trial and on appeal.

"6. Whether admission of testimony of lawyer's secretary invaded attorney-client relationship.

"7. Whether admission of cumulative evidence of similar untried charges violated due process and equal protection clause of Fourteenth Amendment to the Federal Constitution.

"8. Whether the Honorable Eugene Carter, Montgomery County Circuit Judge, who impaneled both petitioner's Grand Jury and Petit Jury violated Article 6, Section 15 of the Alabama Constitution, prohibiting judge from holding two offices, and Title 41, Section 161 of the Alabama Code holding judge vacates judicial office by acceptance of another office, in acting as judge and member of Board of Jury Commissioners at same time.

"9. Whether Section 380(1) of Title 15 of the Alabama Code violates the Fourteenth Amendment to the Federal Constitution.

"10. Whether a court can force a defendant to trial within ten minutes of appointment of counsel as happened in petitioner's first trial.

"11. Whether in November of 1962, an Alabama Circuit Court could legally force a lawyer over protest of both lawyer and defendant to represent defendant on trial in a non-capital case. .

"12. Whether a Circuit Judge can transfer a case to another judge after arraignment and impanelment of jury."]

(3) Brief of Attorney General opposing petition for certiorari.

(4) Sanders's reply brief.

(5) Supplemental brief of Attorney General.

(6) Sanders's memorandum re: Attorney General's supplemental brief.

(7) Petition of Attorney General for rehearing.

(8) Supplemental petition of Attorney General for rehearing.

## II.

### The Record Proper

#### A.

#### *Circuit Court Cases 740 and 749*

The indictments of November 9, 1962, were for first degree forgery in falsely making, etc., or uttering a check for $150.00.

Sanders *attended by counsel* was arraigned on these indictments November 13, 1962, and pled not guilty in each case.

#### B.

#### *Circuit Court Case No. 749*
#### (Our 3 Div. 142)

The court ordered trial set for November 20.

In an *unverified* motion filed in open court November 21, 1962, counsel for Sanders moved that the cause be continued. This prayer was based on the claim:

"That the Defendant has been committed or sent to a Federal Mental Institution at Springfield, Missouri and stayed and remained there from January, 1959 until March, 1960 for treatment. He, therefore, moves the Court that he be examined by a physician and/or a psychiatrist as to his sanity at the present time and as to whether he was sane at the time of the commission of the offenses with which he is charged."

The court denied the motion: the record fails to show that any evidence was tendered or promised to substantiate insanity.

Next, counsel, in writing, sought leave to withdraw because: (1) for the past three months he had been Sanders's attorney in "many matters of a civil nature"; (2) he (counsel) had that summer contracted amoebic dysentery causing him to lose thirty pounds and was currently suffering from an attack; and (3) that on November 19 he had spent the whole day in another case. No physician's affidavit was attached to this document.

On the court's denying this request, counsel then filed another request for leave to withdraw. This was based on the belief that Sanders had failed to make restitution to the merchants and shopkeepers. Restitution was alleged to be the moving cause of counsel's taking the employment.

This motion evoked the following order:

"In this cause the defendant's attorney, * * * appears in Court and files his motion to resign and remove himself as attorney for the defendant, Hillard A. Sanders. The Court is of opinion that the said * * * should continue to represent the said Hillard A. Sanders as his attorney and it is considered and ordered by the Court that the said * * * be and he is hereby appointed to represent the defendant, Hillard A. Sanders, in this cause."

The record then shows the empaneling and swearing of a petty jury a verdict finding Sanders guilty of forgery in the first degree, adjudication, allocutus and a sentence of thirteen years imprisonment. This term is within the statute. Code 1940, T. 14, § 207.

The remaining entries pertain to Sanders's request for a free transcript of testimony. This request was denied.

### C.

### *Circuit Court Case No. 740*

### (Our 3 Div. 149)

This case was tried February 26, 1963. On February 24, Sanders had moved for a continuance pending the outcome of his appeal in the other case, averring also:

"For the further reason Defendant was caught by surprise on February 19, 1963 when he was called before the Court from his cell in the Montgomery County jail and advised that he was to go on trial on February 25, 1963 hence, defendant has had no opportunity to contact relatives in Spain relative to employing counsel and preparing his case for trial."

Sanders also moved (1) to quash ("dismiss") all indictments because the Grand Jury was tainted by systematic exclusion of citizens qualified to vote; (2) to seek pretrial mental examination; and (3) to have a change of venue. All motions were overruled by the court.

■ Thereupon, Sanders demurred on the ground that the indictments "do not charge on their face the offense of forgery and that passing worthless checks in (sic) not an indictable offense under the Alabama Forgery Statutes."

This demurrer was correctly overruled. The indictment was in Code form (No. 63, T. 15, § 259), and phrased alternatively as to forging, etc., or knowingly uttering a forged instrument, etc. Curtis v. State, 9 Ala.App. 36, 63 So. 745; Terry v. State, 29 Ala.App. 340, 197 So. 44; Ex parte State, 213 Ala. 1, 104 So. 40.

■ Sanders also filed a plea of double jeopardy because the State had introduced the alleged counterfeit check in evidence on the trial of Circuit Court Case No. 749 (3 Div. 142). Uttering other checks is admissible to show a scheme. Christison v. State, 41 Ala.App. 192, 142 So.2d 666 (headnote 2). Anno. 34 A.L.R.2d 777.

It is uncontradicted that, after arraignment, Sanders had no lawyer in Circuit Court Case No. 740 (our 3 Div. 149). The judgment entry shows a jury and verdict of guilt, adjudication, allocution and sentence of eight years imprisonment.

However, other than the above quoted reference from his motion for continuance as to his needing "opportunity to contact relatives in Spain relative to employing counsel," Sanders made no claim of poverty. But see Keur v. State, Fla., 160 So.2d 546.

The appellate record was filed here April 3, 1963.

## III.

### Authorities Cited

The action of the United States Supreme Court here coincides with the repeal of Act No. 62, September 15, 1961, which Sanders sarcastically called a collection of window dressing elements.

■ This latter act is now replaced by Act No. 525, September 16, 1963. In view of the response of the Supreme Court in Martin v. State, Ala., 167 So.2d 912, see also Martin v. State, Ala.App., 167 So.2d 915*, we see no need to enlarge this opinion further on the procedural aspects of indigency, the right to counsel both at trial and on appeal and the right to present an appellate record. The provisions of these acts are to be liberally construed to accomplish the purposes of their enactment, i. e., to meet the objections of Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891; Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892; Draper v. Washington, supra; Gideon v. Wainwright, supra; and Douglas v. California, supra.

■ Gideon v. Wainwright, supra, overruling Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595, requires that a state not prosecute a man for "a crime"[2] unless he be attended throughout all critical stages from arraignment on the indictment (Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114) by counsel. The court, per Mr. Justice Black, said:

"We accept Betts v. Brady's assumption, based as it was on our prior cases, that a provision of the Bill of Rights which is 'fundamental and essential to a fair trial' is made obligatory upon the States by the Fourteenth Amendment. We think the Court in Betts was wrong, however, in concluding that the Sixth Amendment's guarantee of counsel is not one of these fundamental rights. * * *"

■ Draper v. Washington, supra, reversing State of Washington v. Long, 58 Wash.2d 830, 365 P.2d 31, concerns itself with what is an adequate record for appellate review under Griffin v. Illinois, supra. The trial judge's power to censor or curtail the record under the need to suppress frivolity in appealing was rejected. Mr. Justice Goldberg said:

"The predictable finding of frivolity is subject to review without any direct scrutiny of the relevant aspects of what actually occurred at the trial, but rather with examination only of what the parties argued * * * on the transcript motion and what the judge recalled * * *"

■ The third authority to which we are referred is Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811. The holding there is that if a state, as of right, allows an appeal from a criminal conviction, it must afford a convicted pauper the right of free counsel so as to present the appeal.

## IV.

### Questions Raised

Since the Supreme Court of the United States has only cited Gideon, Draper and Douglas, we shall only take up such of the questions, 1–12 (in IIB(2), above), as seem likely to arise again.

---

* Post p. 447.

2. Where in the scale of offenses Gideon descends we do not need to ponder: Sanders stands indicted for some twelve separate felonies. See Fish v. State, Fla., 159 So.2d 866. (Gideon v. Wainwright does not apply to misdemeanors.)

## A.

■ The composition of the grand jury was not timely raised[3] nor was the supposedly contrived imbalance, if any, of black and white jurors prejudicial to Sanders, a white man.

## B.

■ This court can and does decide appeals on the record proper. It is the responsibility of the appellant to get the appellate papers. If he is a pauper, then Acts No. 525 and No. 526, approved September 16, 1963, afford him the opportunity to ask for a free transcript of the record and of evidence as well as counsel in the appellate court. Counsel has the duty of developing the appellate record.

## C. D. & E.

We pass over the questions raised under 3, 4 and 5 of IIB(2), above, as moot.

## F.

■ The transcript of evidence ordered on remand in 3 Div. 142 should contain the questions and answers embracing the testimony of defense counsel's secretary. We forego as premature any hypothetical discussion of the question of the extent of the attorney-client privilege.

## G.

■ To introduce—as we understand the claim—other checks which tend to show a similarity in the names used of maker, payee and bank can be done within the rules of evidence. See discussion above as to the circuit court's ruling on plea of double jeopardy (3 Div. 142) citing Christison v. State, 41 Ala.App. 192, 142 So.2d 666; Anno. 34 A.L.R.2d 777. We see no Fourteenth Amendment violation as shown on the present attenuated record.

## H.

■ Nothing appears of record that counsel in either case raised the question as to effect of the Circuit Judge being a member of the Jury Commission of Montgomery County.

## I.

Act No. 62, September 15, 1961, was repealed by Act No. 525, September 16, 1963, § 13. The latter being procedural in nature, affords the adjectival law of these cases for establishment of the right, if any, to a free transcript on the taking of an appeal.

## J.

■ Sanders's claim that he was put to trial within ten minutes after the court ap-

---

3. Under Coleman v. Alabama, 375 U.S. 893, it is no longer necessary for a Negro defended by a Southern white lawyer to raise the question of systematic exclusion of members of his race from the jury rolls *before* pleading to an indictment. Apparently, the Supreme Court of the United States has been swayed by the reasoning of Rives, J., in United States ex rel. Goldsby v. Harpole, 6 Cir., 263 F.2d 71, to the effect that Southern white lawyers are more prone to consider the practical aspects of winning a verdict than of perfecting an appeal. Therefore, it is contended that they lead their Negro clients into a position of waiving the right to a jury which reflects the race of the defendant.

In the *instant cases,* however, in both records, Sanders is shown to have had a white lawyer with him on arraignment, and, although it does not show in the records before us, he has stated in brief for one of his many applications that he is white.

Accordingly, whether or not Negroes are systematically excluded from the jury rolls of Montgomery County, Alabama, is not, as to Sanders, a pertinent denial of due process or equal protection under the Fourteenth Amendment of the Constitution of the United States. Moreover, the basis for this claim is only indirectly that Negroes are excluded since the claim is rested on the pendency of a voter registration action in the U. S. District Court for the Middle District of Alabama. Being an elector or not being an elector is irrelevant to a man's being a juror in Alabama. Code 1940, T. 30, § 21, as amended.

pointed him counsel is valid. However, its fallacy lies in the fact the counsel so appointed was the same attorney who had been Sanders's attorney of record from arraignment.

### K.

 As we understand the practice of the Federal courts, lawyers are obliged to accept the representation of indigent defendants without leave to resign. That the state court compelled a lawyer already hired to go on with a case, does not, prima facie, show an abuse of discretion rising to a denial of due process, at least as to the client. Palpably the filing of previously prepared written motions would support an inference of a design to obtain a continuance.

### L.

 In many courts it is the practice of one judge to call the docket for cases ready for trial, leaving the other judges free either to try cases or handle other business. A question similar to Sanders's was raised in Ex parte Powell, 39 Ala.App. 423, 102 So.2d 923. There we said:

> "As to item 3a, we find no authority for the proposition that an individual judge, in a court with as many judges as that of the Jefferson Circuit Court, is required to see a case through from beginning, including all preliminary proceedings, on through trial. * * *"

In view of the orders of remandment herein, we forego any further discussion as to the point at which, in the course of a trial, one judge can be substituted for another.

### M.

 The time for pleading to an indictment is fixed by Code 1940, T. 15, Ch. 13, particularly §§ 278 and 279. As to pleading irresponsibility, § 423 reads:

> "§ 423. When the defense of insanity is set up in any criminal prosecution it must be by special plea, interposed at the time of arraignment and entered of record upon the docket of the court, which in substance shall be, 'not guilty by reason of insanity.' Such plea shall not preclude the usual plea of the general issue, which shall not, however, put in issue the question of the irresponsibility of the accused by reason of this alleged insanity, this question being triable only under the special plea."

Sanders's merely having been sent to the medical center operated by the Federal Prison Bureau at Springfield, Missouri, is not of controlling evidentary force. Hawkins v. State, 267 Ala. 518, 103 So.2d 158. See also Coffman v. United States, 10 Cir., 290 F.2d 212.

We quote from Hughes, Criminal Responsibility, 16 Stanford L.Rev. 470, 482:

> "* * * That the psychiatrist endeavors to treat the sociopath, for example, should not lead one to assume that the psychiatrist thinks that such a person is mentally ill in the sense that he ought always to be exempt from a finding of guilt and punishment. Indeed psychiatrists admit that for some sociopaths the best therapy is the prospect of an adverse judgment and the imposition of punishment. Of course it is not the psychiatrist's job, except as an adjunct to therapy, to make social judgments in the nature of fixing blame and responsibility. But we should not think that, because this is not the nature of his professional task, he denies its relevance for other purposes."

In Pearson v. State, 41 Ala.App. 366, 133 So.2d 60, this court stated:

> "It is well settled that the provisions of Title 15, Chapter 21, Article 2, Code of Alabama 1940, pertaining to inquiry into a defendant's sanity at the time of trial, are not mandatory, but such matters are addressed to the sound discretion of the trial judge and his action is

428

not revisable on appeal except for an abuse of discretion. * * *"

Cf. *Wear v. United States*, 94 U.S.App. D.C. 325, 218 F.2d 24.

V.

Disposition

A.

*3 Div. 142*

In 3 Div. 142 (Circuit Court No. 749), the judgment of conviction must stand pending appeal.

The orders of the circuit court of January 25, 1963, and of April 26, 1963, denying Sanders a free transcript are hereby reversed and the cause is there remanded for further proceedings agreeably herewith and under the provisions of Acts No. 525 and No. 526, supra, including but not limited to, *First*, the ascertainment and finding of:

"1. Whether or not defendant has arranged to be represented by and have the assistance of counsel.

"2. Whether or not defendant desires the assistance of counsel.

"3. Whether or not defendant is able financially or otherwise to obtain the assistance of counsel."

and, *Second*, the giving to Sanders (and counsel, if any) ten days strict notice under paragraph 1 of § 8, Act No. 525, of his opportunity to file a petition for a free transcript at public expense.

B.

*3 Div. 149*

In 3 Div. 149 (Circuit Court No. 740), the judgment of conviction is reversed and the cause is remanded to the circuit court for new trial, and, if appointed counsel is asked for, an initial determination of Sanders's indigency and need and desire for appointment of counsel.

3 Div. 142 Remanded with directions.
3 Div. 149 Reversed and remanded.

[After the foregoing opinion was adopted by the court in conference, the appellant, on August 14, 1964, filed three motions. The opinions and orders of the court on these three motions are set forth below.]

3 Div. 142
3 Div. 149

CATES, Judge.

 Motion to allow personal appearance before this court on remandment of these causes from the Supreme Court of the United States denied. Rule 4, Supreme Court of Alabama; Code 1940, T. 13, § 23.

We consider these causes remain in fieri on the submission heretofore made—though with our former judgments no longer of force and effect. Hence, no further argument, either from the appellant or the State, is permissible under the Rules of the Supreme Court of Alabama, excepting only such as might be made in support of an application for rehearing of the judgments this day made. See *Artrip v. State*, 41 Ala. App. 492, 136 So.2d 574.

Motion denied.

3 Div. 142

CATES, Judge.

 Motion to fix bail at $750.00 is denied. Code 1940, T. 15, § 369, as amended.

Bail fixed at $13,000.00 pending appeal is to remain in effect until application for reduction is made to the Circuit Court of Montgomery County.

Post conviction bail is not affected by Constitution 1901, § 16. In a *pre*-conviction case, we recently approved a reduction of bail from $25,000 to $12,500 on each of three indictments for second degree bur-

glary and grand larcery. Wade v. State, ante p. 400, 166 So.2d 739. There we stated:

"We understand each indictment to be based on but one transaction. Hence, the maximum penalty for conviction under each indictment would involve ten years imprisonment.

"There is a rough rule of thumb that bail for residents be fixed at a maximum of $1,000.00 for each year of potential imprisonment. * * *"

We forego deciding whether Sanders is admissible to bail under § 369, as amended, supra.

Motion denied without prejudice to apply to the Circuit Court for reduction in amount of bail pending appeal.

3 Div. 149

CATES, Judge.

Motion to fix bail at $750.00 is prima facie valid because of the reversal of the judgment of conviction. The order of the circuit court fixing bail pending trial at $750.00 is automatically reinstated.

Motion granted.

